TEXAS & N. O. R. CO. v. MARSHALL.

(Court of Civil Appeals of Texas. Galveston. Oct. 5, 1911.)

1. CARRIERS (§ 321*) — TRANSPORTATION OF PASSENGERS—RELATIONS WITH EMPLOYÉS.

An instruction that a passenger was entitled to courteous treatment by the carrier's conductor was not error; the words "courteous treatment" being construed with regard to the circumstances of the case.

[Ed. Note.—For other cases, see Carriers, Dec. Dig. § 321.*]

2. CARRIERS (§ 319*)—TREATMENT OF PASSENGERS — INSULT TO PASSENGER — EXCESSIVE DAMAGES.

Plaintiff, on purchasing two railroad tickets from defendant's agent, was given, by mistake of the agent, for one of the tickets a stub, which the agent should have retained. Plaintiff put the tickets in his pocket, and on tendering the same to the conductor he, in a loud tone of voice, asked plaintiff how he expected to get to the Sabine river on that ticket, and

whether he expected to be carried for nothing. Plaintiff asked what was the matter with the ticket, when the conductor said: "You hush right now; I don't want to hear any of that." That he was not responsible for anything the selling agent did, and that if he did his duty he would make plaintiff pay his fare or put him off the train, and turned to the next passenger, saying, "The idea of a man getting on a train with a ticket like that, and wanting to ride for nothing!" Plaintiff then told the conductor that he bought the ticket at L., and if the conductor wanted to put him off to "crack his whip," to which the conductor replied, "I will crack my whip, and crack your whip, too," but he accepted the ticket and permitted plaintiff to ride. *Held,* that a verdict, allowing plaintiff $900 for mortification and humiliation on account of alleged insulting language of the conductor toward him in the presence of other passengers, was excessive, and should be reduced to $100.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 1338–1345; Dec. Dig. § 319.*]

3. APPEAL AND ERROR (§ 1175*)—REVERSAL—JUDGMENT ON APPEAL.

Since, in an action for damages for humiliation of a passenger by the alleged misconduct of a conductor, the law furnishes no standard by which the amount of damages can be exactly measured, the Court of Civil Appeals, on determining that a verdict was excessive, would not render final judgment for a reduced amount, as authorized by Rev. St. 1895, art. 1029a, but would remand the case for a new trial, in case a suggested remittitur was not made.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 4573–4587; Dec. Dig. § 1175.*]

Appeal from Liberty County Court; J. B. Simmons, Judge.

Action by A. W. Marshall against the Texas & New Orleans Railroad Company. Judgment for plaintiff, and defendant appeals. Affirmed on condition.

See, also, 122 S. W. 946.

Baker, Botts, Parker & Garwood, Parker, Orgain & Butler, Stevens & Pickett, and J. S. McEachin, for appellant. F. M. Stevens, R. J. McMurrey, and H. E. Marshall, for appellee.

REESE, J. This is an action by A. W. Marshall in the county court to recover of the Texas & New Orleans Railroad Company damages in the sum of $995.

Plaintiff, Marshall, had purchased of the ticket agent of defendant at Liberty two tickets, one for his sister-in-law and one for himself, from Liberty to Lake Charles, La. Each ticket contained two coupons; one entitling the holder to transportation from Liberty to the Sabine river, and the other from the Sabine river to Lake Charles. Through an error on the part of the agent, plaintiff was given, with one of the tickets, the "stub," which the agent should have retained, instead of the coupon, showing his right to transportation to the Sabine river. Plaintiff put the tickets in his pocket, and when the conductor asked him for his ticket he presented this defective ticket. He was ignorant of the defect, assuming that the agent had given him a proper ticket. The conductor made some objection to the ticket, and some words passed between them, but no attempt was made, either to require plaintiff to leave the train, or to pay fare, and plaintiff was allowed to proceed. The suit is to recover damages for the mortification and humiliation suffered by plaintiff on account of the alleged insulting language of the conductor towards him, in the presence of other passengers, in a crowded car. Upon a trial with a jury, there was a verdict in favor of plaintiff for $900 damages, and from the judgment thereon this appeal is prosecuted.

The facts above stated are undisputed; the only controversy as to the facts arising upon the language and conduct of the conductor.

This is the second appeal (T. & N. O. R. R. Co. v. Marshall, 122 S. W. 946); the judgment upon the former trial having been reversed for various errors assigned.

[1] Objection is made by the first assignment of error to that portion of the court's charge which is as follows: "You are instructed that the plaintiff, at the time alleged, was properly a passenger on said train, and was entitled to courteous treatment by the conductor." It is insisted that it is in substance identical with a portion of the charge on the first trial held error upon the former appeal, "that it was the duty of the defendant to furnish courteous employés." The two propositions, as they arise upon the pleadings and evidence, are entirely different, as will be clearly seen by an examination of the opinion upon the former appeal. We cannot agree with defendant that the charge is erroneous. The words "courteous treatment" must be construed with regard to the circumstances of the case, and must have been so understood by the jury, and do not impose upon the appellant a higher duty towards its passengers than is required by law. There was no danger that the jury would understand from this language in the charge that the conductor, in demanding his ticket from a passenger, must approach him with the air and manner a "French dancing master" would use in approaching a lady in a ballroom, to use the illustration of appellant in its brief. The passenger is entitled to polite and respectful treatment from the conductor, until he forfeits that right by some misconduct of his own, and the language of the charge means nothing more. G., C. & S. F. Ry. Co. v. Luther, 40 Tex. Civ. App. 517, 90 S. W. 45.

There is no merit in the second assignment of error, which is overruled without discussion.

[2] The third assignment of error presents the proposition that the verdict for $900 is excessive. Appellee sued for $995, and on the first trial the verdict was for the whole amount claimed. An assignment of error up-

---

*For other cases see same topic and section NUMBER in Dec. Dig. & Am. Dig. Key No. Series & Rep'r Indexes

on the former appeal that this was excessive was sustained. As the judgment was reversed upon several other grounds, no suggestion of remittitur was made in the opinion. 122 S. W. 946, supra. The evidence in the present case is substantially the same as that upon the first trial. There was a conflict in the evidence as to what passed between the conductor and appellee at the time the tickets were called for. According to the testimony of the conductor, he was not guilty of any language or conduct at which any reasonable man could have taken offense, but the jury has resolved the conflict in the evidence in favor of that of appellee, and we will let him tell his own story of what occurred:

"When I got the tickets from the agent, I just shoved them down in my pocket, and when he came around for them I reached down and got them and handed them to him. He looked at the tickets and punched one of them, and looked at the other one, and then asked me: 'How do you expect to get to Sabine river on this ticket; do you expect me to carry you for nothing?" He was talking in a very loud tone of voice, and I asked him what was the matter with the ticket; that I had purchased it at Liberty. He said: 'You hush right now; I don't want to hear any of that; I am not responsible for anything that agent does there at Liberty.' When he said that, I said, 'What's the matter with it?' and he said, 'It is not a ticket, and is not any good at all,' and I told him, 'If you are not going to use that ticket, I want it back,' and he just shoved it into his pocket, and said 'Well, if I would do my duty, I would make you pay your fare, or put you off the train,' and then he turned around and said to a man on the next side of the aisle, 'The idea of a man getting on a train with a ticket like that, and wanting to ride for nothing!' I never said anything. I told the conductor I bought the ticket at Liberty, and if he wanted to put me off just to crack his whip, and he said, 'I will crack my whip, and crack your whip, too,' and spoke in a very loud tone of voice. The passengers in the coach could hear him; they could hear him at least halfway down the car, and everybody looked when the conductor was talking to me. I did not know that the tickets were incorrect in any way. I had never looked at them. The conductor would not let me explain. The conductor never did say he would carry me, but just put the ticket and stub in his pocket, and walked off, talking in a loud, angry tone of voice."

Appellee's sister-in-law testified: "Mr. Marshall delivered the tickets to the conductor, who looked at them, and said: 'What do you expect me to do with these tickets; carry you to the Sabine river for nothing?' and Mr. Marshall said: 'I do not know, sir. I bought the tickets and expected to ride on them.' Then the conductor said in a very loud, rough tone, 'If I would do my duty, I would stop the train and put you off,' and Mr. Marshall

said, 'All right, sir, just crack your whip,' and the conductor said: 'None of that, sir, none of that; shut up.' The conductor then put the ticket in his pocket, and walked off, talking in a very loud manner, appearing to be angry. The conductor spoke loud enough to be heard over the coach, and the passengers were looking at us, seeming to be listening to the conversation. The conductor was talking in a very loud, rough tone of voice, and appeared to be angry. He spoke in a very rough manner."

According to this testimony, the conductor acted with great rudeness. The language used speaks for itself, but, outside of this rude language, which a sensitive person might have considered insulting, there was nothing. The tickets were accepted, and appellant proceeded to his destination. Nobody among the passengers could have failed to understand that the only trouble arose over a mistake on the part of the agent at Liberty, and we cannot understand how a reasonable man could have been greatly humiliated by the objection made by the conductor to accepting the tickets on this ground. We cannot see that the language used by the conductor involved any charge of dishonorable conduct on the part of appellee. It is clear that the ticket presented did not, in fact, entitle appellee to passage, and that, so far as the conductor was concerned, he would have been personally justified in requiring appellee to pay fare, or leave the train. His language and manner were rude and coarse, but he was talking to a man who knew his rights, and was evidently determined to stand up for them. We are still of the opinion that the amount awarded was grossly excessive. It is true that the law affords no standard by which damages in such cases can be exactly measured, and the amount must be left to the sound discretion of the jury; but when it is made clear to the court that the amount awarded is not the result of the exercise of such sound discretion, but of some motive other than the award to the complaining party of just compensation for the wrong inflicted, whether out of sympathy for the plaintiff or a sense of indignation at an apparently unprovoked wrong, it becomes the imperative duty of the trial court, in the first instance, or of this court on appeal, to require such remittitur as will reduce the verdict within reasonable limits, or grant a new trial. This is not an improper invasion of the just and proper province of the jury, but merely the exercise of a power clearly inherent in the courts, and the discharge of a duty as clearly imposed. A verdict for $100 we think will liberally compensate appellee. If appellee will within 20 days enter a remittitur for all over this amount, the judgment will be affirmed for $100 and the costs of the trial court; otherwise it will be reversed, and the cause remanded. Costs of the appeal will be taxed against appellee.

[3] In view of the provisions of article

1029a, R. S., we do not see our way clear to a reversal of the judgment of the trial court, and a rendition of judgment here for the amount of the reduced verdict. As the law furnishes no standard by means of which the amount of the damages can be exactly measured, in the absence of the statute referred to, we could only, in case of an excessive verdict in cases of this kind, reverse the judgment and remand the cause for a new trial. It is by virtue of the statute alone we are authorized to indirectly fix the amount by requiring a remittitur, and we think that to render judgment as we are asked to do by appellant would be unauthorized.