TEXAS & P. RY. CO. v. WHARTON et al. †

(Court of Civil Appeals of Texas. El Paso.
Feb. 29, 1912. Rehearing Denied
March 20, 1912.)

1. CARRIERS (§ 373*)—CARRIAGE OF PASSEN-GERS — EJECTION — VALIDITY OF TICKETS — AGENCY.

Where the agent of a terminal line refuses to validate a return ticket, and the passenger, by reason thereof, is ejected by the initial carrier who sold the ticket, the initial carrier is liable, the terminal agent being its agent for the purpose of validating tickets.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. § 1461; Dec. Dig. § 373.*]

2. CARRIERS (§ 356*) — PASSENGERS — EJEC-TION.

The interstate commerce rules do not so peremptorily require validation of return tick-ets at the terminal point as to authorize the ejection of passengers because their tickets were not validated, where the want of valida-tion was due to a refusal by the agent at the terminal point.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 1409, 1410, 1423–1432; Dec. Dig. § 356.*]

3. APPEAL AND ERROR (§ 1062*)—SUBMISSION OF ISSUES—HARMLESS ERROR.

Where the right of passengers to recover for being ejected from a train because their tickets were not validated was established by proof that the agent at the terminal point had been given a reasonable opportunity to validate the tickets and had failed to do so, the action of the court in submitting to the jury the lia-bility for refusal to validate at another point was not prejudicial.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 4212–4218; Dec. Dig. § 1062.*]

4. APPEAL AND ERROR (§ 1027*) — ASSIGN-MENTS—MATERIALITY.

Assignments of error which, if sustained, could not change the result, were immaterial.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. § 4033; Dec. Dig. § 1027.*]

5. CARRIERS (§ 381*)—EJECTION OF PASSEN-GER—ACTION—EVIDENCE—VARIANCE.

Where, in an action for being ejected from a train, the plaintiffs' pleading alleged that upon their return to the depot it was raining and the streets were sloppy, evidence that the depot leaked was not inadmissible because there was no further allegation of any imper-fection in the depot.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 1473–1482; Dec. Dig. § 381.*]

6. APPEAL AND ERROR (§ 1050*) — EJECTION OF PASSENGER—ACTION—EVIDENCE—ADMIS-SION—HARMLESS ERROR.

The admission of such evidence, if error, was harmless.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 4153–4160, 4166; Dec. Dig. § 1050.*]

7. CARRIERS (§ 381*)—EJECTION OF PASSEN-GER—EVIDENCE.

In an action by a female passenger for ejection, it being conceded that her ticket was good, but the defense being that she was not ejected, but got off voluntarily when her two companions were compelled to leave the train, their tickets being, on their face, invalid, a question to plaintiff whether, if she could have remained on the train, she would have prefer-red to get off with her companions rather than pursue her journey, was properly excluded,

her preference being wholly immaterial if she was in fact ejected.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 1473–1482; Dec. Dig. § 381.*]

8. CARRIERS (§ 382*) — EJECTION FROM TRAINS—EXCESSIVE RECOVERY.

Where three ladies traveling without es-corts were ejected from a train as interlopers, a recovery of $750 in each case was not ex-cessive, though the actual delay and inconveni-ence was of short duration.

[Ed. Note.—For other cases, see Carriers, Dec. Dig. § 382.*]

Appeal from District Court, Nolan County; Jas. L. Shepherd, Judge.

Consolidated actions by Mrs. M. E. Whar-ton, Mrs. Stella Williams, and Pearl Sparks against the Texas & Pacific Railway Com-pany. From a judgment for plaintiffs, de-fendant appeals. Affirmed.

Douthit & Smith, for appellant. Beall & Beall and J. W. McDugald, for appellees.

PETICOLAS, C. J. These were suits for damages by the appellees (which were con-solidated) for being ejected from appellant's passenger train under the following circum-stances:

Mrs. Wharton and Mrs. Williams purchased tickets from appellant from Roscoe, Tex., to Piedmont, Ala., and return. These tickets were issued by the appellant, and in form they were tickets from Roscoe to New Or-leans and from New Orleans to Roscoe over appellant's railway, with coupons attached which were to be exchanged at New Orleans for tickets over the Louisville & Nashville and Seaboard Air Line from New Orleans to Piedmont and return. Among other provi-sions, the tickets contained one to the effect that they were not good for return passage unless the holder identifies him or herself as the original purchaser to the satisfaction of the authorized agent of the ——— rail-road at destination, as shown in attached coupon, on or before his or her departure re-turning. Mrs. Wharton and Mrs. Williams traveled to New Orleans on the tickets, where they exchanged the coupons for tick-ets from New Orleans to Piedmont. Just be-fore returning from Piedmont they were joined by Miss Pearl Sparks, who purchased her ticket at Piedmont. Mrs. Wharton and Mrs. Williams carried all four tickets to Pied-mont from New Orleans, and just before the return trip, to use the language of the witness Mrs. Williams: "When we started back from Piedmont I carried all four of the tickets to the agent; I carried them myself. I told him that I wanted them validated. I did not know which one should, and which one should not, be validated. He said the two tickets on the Texas & Pacific would be validated at New Orleans. He validated two, and we came back to New Orleans. We had two tickets that brought us to New Orleans, and we got two others that carried us to Pied-

mont, and the two that carried us to Piedmont brought us back to New Orleans. The agent at Piedmont looked at two of them and handed back the Texas & Pacific tickets, * * * , the agent said we would have to have them fixed at New Orleans. The agent did not sign the original tickets. He said they would be fixed at New Orleans."

They returned to New Orleans without any incident, but, on presenting the Texas & Pacific tickets to the agent at that point, he refused to validate them. Shortly after leaving New Orleans on the train they were ejected, because the tickets were not validated; that is to say, Mrs. Wharton and Mrs. Williams were ejected for this reason, and the testimony is conflicting as to why Miss Sparks was ejected, she claiming that no distinction was made between them and that she was forced to leave the train by the conductor, the conductor's testimony tending to show that she left the train because her companions had to go back.

[1] It is apparent that either New Orleans or Piedmont was the contractual destination of the trip. It is also apparent that the railway companies failed to validate the tickets at either point. The contention is made that the agent at Piedmont was not the agent of the Texas & Pacific Railway Company, and that therefore his failure to validate could not make the Texas & Pacific liable for the ejectment. This proposition has been decided in this state adversely to this contention. See Railway v. St. John, 13 Tex. Civ. App. 257, 35 S. W. 502; Railway v. Jones, 38 Tex. Civ. App. 129, 85 S. W. 39; Railway v. Wiseman, 136 S. W. 797. In some of these cases writs of error were refused by the Supreme Court, and in each of them it is held that the agent of the terminal line is, for the purpose of validating the tickets, the agent of the initial carrier who sold the tickets. It follows, therefore, that if the Texas & Pacific failed to validate the tickets at Piedmont, and, if thereafter it ejected the passengers for lack of such validation, the plaintiffs should have judgment.

[2] The main contention made by counsel for appellant is that Piedmont was the proper place of validation and the only place that the tickets could be legally validated under the tariff provision by virtue of which the tickets were sold, and the rules and regulations of the Interstate Commerce Commission applicable thereto. Under this main proposition they make, in effect, two contentions: (a) That, as the Interstate Commerce rules required a validation at Piedmont, the plaintiffs must have required a validation at that point and, without regard to the circumstances, if the plaintiffs failed to obtain a validation at that point the appellants were authorized to eject them; (b) that the trial court erred in submitting to the jury that the plaintiffs might recover if there was no validation at Piedmont, or if there was no validation at New Orleans.

With regard to their contention stated in subparagraph (a) above, we feel sure that this is not the law, and are of the opinion that it was the duty of the defendant company, through its agent at Piedmont, when afforded a reasonable opportunity so to do, to validate the tickets; and, if its agent failed in this duty, the defendant would not be authorized to eject the plaintiffs for lack of such validation.

[3] The submission of the lack of validation at New Orleans would ordinarily require us to determine, first, whether New Orleans was the destination of the tickets in so far as the Texas & Pacific Railway was concerned; and, second, whether the Interstate Commerce Commission's rule that the tickets could not be validated at New Orleans would be held to control rather than the general law. We do not think it necessary to determine these questions in this case, for the reason that the testimony is practically undisputed as to what occurred at Piedmont and shows, as a matter of law, that the defendant company's agent at that point was afforded a reasonable opportunity to validate the tickets and failed to do so. The right to recover being indisputably shown by the facts, the court's submission of the lack of validation at New Orleans would not require a reversal of the case.

What has been said, we think, disposes of the ninth, tenth, eleventh, thirteenth, fourteenth, fifteenth, sixteenth, and seventeenth assignments of error.

[4] The first, second, third, fourth, fifth, and sixth assignments are addressed to certain demurrers sustained and objections sustained to certain clauses in the tickets. Under the view we take of the case above stated, they all become immaterial because if sustained they could not change the result.

[5, 6] The seventh assignment of error and proposition under it complains that the court erred in admitting the testimony of Mrs. Stella Williams to the effect that on their return to New Orleans the Texas & Pacific depot leaked, the specific objection being that there was no pleading alleging any imperfection in the depot. We overrule the assignment on two grounds: One is that there was an allegation that it was raining, the weather was wet, and the streets sloppy; and the additional fact that the depot leaked, if error, which we do not decide, was not such as should reverse the case.

[7] The twentieth assignment of error and propositions thereunder was addressed to the case of Miss Pearl Sparks and was to the effect that the court erred in refusing on cross-examination to permit Miss Sparks to answer the question whether or not if she could have pursued her journey when her companions were compelled to get off she

would have preferred to get off with them rather than pursue her journey. We do not believe that this was admissible testimony. If Miss Sparks, who had a perfectly valid ticket, was ejected by the defendant company, she was entitled to recover therefor, and the inquiry whether she preferred to get off or stay on was immaterial and not admissible under the circumstances.

[8] The eighteenth, nineteenth, and twenty-first assignments are to the effect that the verdicts are excessive, each of them being for $750. We are of the opinion that these verdicts are not excessive. It is true that the actual physical delay and inconvenience did not continue for any great length of time, but when we consider that these ladies were traveling without male companions, and the humiliation, embarrassment, annoyance, and shame which may have, and probably was, caused by the fact that they were ejected as interlopers, we do not feel authorized to disturb the conclusion which the jury reached as to the amount of damages they were entitled to.

For the reasons indicated, the case is affirmed.