HOUSTON E. & W. T. RY. CO. v. SNOW.
(No. 306.)

(Court of Civil Appeals of Texas. Beaumont.
Feb. 15, 1918. Rehearing Denied
March 6, 1918.)

1. APPEAL AND ERROR ☞1004(1)—EJECTING
PASSENGERS—QUESTIONS FOR JURY—DAM-
AGES.

Where the carrier's liability for wrongful
ejection of a passenger is established, the
amount of damages found by the jury will not
be disturbed unless excessive or indicative of
passion or prejudice.

2. CARRIERS ☞382(7)—EJECTION OF PASSEN-
GER—EXCESSIVE DAMAGES.

Where conductor, on the ground that his
ticket had expired, ejected an aged man, whose
ticket was valid, at a point six miles from the
station on a dark night, in a driving rain, and
he suffered mental anguish, fear, and was threat-
ened with pneumonia, though not confined, ver-
dict of $2,000 was excessive, and was reduced
to $1,000.

Appeal from District Court, Liberty Coun-
ty; J. Llewellyn, Judge.

Action by Jesse Snow against the Houston
East & West Texas Railway Company. Judg-
ment for plaintiff, and defendant appeals.
Affirmed on condition that remittitur be
filed. Remittitur was filed, and the judg-
ment, as modified, affirmed.

McMeans, Garrison & Pollard, of Houston,
for appellant. E. B. Pickett, Jr., of Liberty,
for appellee.

HIGHTOWER, C. J. This suit was in-
stituted by the appellee, who was plaintiff
below, in the district court of Liberty county,
against appellant, Houston East & West
Texas Railway Company, to recover damages
against said company in the sum of $2,000.
Appellee alleged substantially that on the
26th day of March, 1917, he purchased a
ticket over the line of appellant railway com-
pany from Houston, Tex., to Cleveland, Tex.,
for which he paid the sum of $1.30; that
said ticket was purchased for the morning
train of March 26th, which left Houston at
7:30 o'clock a. m., but that appellee did not
leave Houston on this train, having missed
the same, and remained over for the train
that left Houston at 9 o'clock p. m. of the
same day; that the agent of the defendant
company at Houston informed appellee that
the ticket was good for the evening train;
that it was honored at the gate, and that he
boarded the passenger train of appellant
which left Houston at 9 o'clock p. m. on
March 26, 1917; that about four or five miles
from the Central station at Houston appel-
lant's conductor refused to honor appellee's
ticket, stating to appellee that his ticket was
out of date, and that the ticket showed to
have been purchased on March 25th in place
of March 26th; that appellee protested, stat-
ing that he had purchased the ticket on
March 26th, and refused to get off the train;
that at some distance from the Central sta-

tion, between five and six miles, the conduc-
tor stopped the train and forced and compel-
led appellee to get off; that the night was
dark, the wind was blowing considerably,
and that it was thundering and lightning
and raining; that it was about 9 o'clock at
night, and at the time appellee was ejected
from said train it was dark and stormy,
windy, lightning and thundering, the rain
having commenced to fall before appellee
was ejected from the train, and that it got
worse before he was ejected; that appellee
was exposed to the cold wind, threatening
weather, and that he was ejected at a place
where there were no houses or other means
of shelter, and was compelled to walk to his
son's house, a distance of about six miles;
that appellee was an old man about 63 years
of age, and that by reason of having to walk
back from the place where he was ejected he
became very much frightened, fearing that he
would be run over by a train, or in all prob-
ability would be attacked by negroes or Mexi-
cans; that he was a country man, not ac-
quainted with city life, and was very much
excited when put off under the circumstances
mentioned; that he suffered great inconven-
ience, worry, fatigue, and mental anguish
in consequence of said wrongful ejection.

Appellant answered by general demurrer
and general denial. The case was tried with
a jury, and on the trial appellant admitted
that its conductor wrongfully ejected appellee
from its train, and that the only issue to be
submitted for the jury's consideration was
the amount of damages to which appellee was en-
titled and this issue alone was submitted for
the jury's consideration, and the jury returned
a verdict in favor of appellee for $2,000, the
full amount sued for.

Appellant's motion for new trial was filed
and overruled, and the action of the court
in that regard was duly excepted to.

There are two assignments of error found
in appellant's brief. The first is that the
verdict in favor of appellee for $2,000 is ex-
cessive, and without support in the evidence,
and shows that the jury was actuated either
by malice against appellant or prejudice in
favor of appellee, or that the same was ren-
dered without due consideration, and without
regard to the evidence introduced upon the
trial, and that the amount so awarded is so
manifestly unjust as to warrant the belief
that said jury was actuated either by preju-
dice in favor of appellee or malice against
appellant, or that the same was rendered
purely for punishment by reason of the fail-
ure of appellant to comply with its contract
of carriage, and was not rendered upon the
evidence as for injuries that appellee was
shown to have sustained.

We have very carefully examined the rec-
ord before us in connection with this assign-
ment, and have concluded that the verdict of

the jury is excessive, and that this assignment should be sustained.

The facts pertinent in this connection may be substantially stated as follows: Appellee was on a visit to his son, who lived in the city of Houston, and on the morning of the 26th of March, 1917, appellee went to appellant's ticket office in Houston, and purchased a ticket to Cleveland, Tex., paying the proper price therefor, with the intention of boarding appellant's train due to leave Houston early that morning, but for some reason appellee was left by this train, and therefore remained over until appellant's evening train was due to leave Houston for Cleveland, about nine o'clock that 'night. Just before appellant's train was due to leave that night, appellee, accompanied by his son, came to the station of appellant, and presented to the gateman at the station his ticket, which he had purchased in the morning, and asked the gateman if the ticket was good for the night train, to which the gateman replied, "it is as good as any I can sell you," and thereupon appellee was passed through the gate and boarded appellant's train. After the train had proceeded on its journey and had reached a distance of about two miles from the station, appellant's conductor came in the coach where appellee was sitting, and on approaching appellee for his ticket appellee handed the conductor the ticket which he had purchased in the morning of that day, which ticket the conductor refused to accept, stating to appellee that the ticket was no good, for the reason that the ticket was purchased the day before, on March 25th, and that he, the conductor, could not honor the ticket under the rules of the company, and that appellee would have to pay a cash fare of $1.30 to Cleveland. Appellee thereupon informed the conductor that he had purchased the ticket on that morning, and that he declined to pay the conductor cash fare to Cleveland, and that, in fact, he had no money with which to pay his fare, and thereupon the conductor told appellee that he would have to get off the train, and caused the train to be stopped, and took appellee by the arm and put him off the train. The ticket in question was, in fact, sold to appellee on the morning of March 26th, but the figure "6" on the ticket was dim, and looked very much like the figure "5," and this misled appellant's conductor, and was the cause of the ejection of appellee. At the time appellee was ejected from the train it was dark, and was raining, and the ground was wet and slippery, and the wind was blowing, according to appellee's statement, very hard. Appellee was unacquainted in the vicinity where he was ejected from the train, and the only lights that he could see at that time were the lights known as the tower lights, somewhere near the point where appellant's line is crossed by the line of the International & Great Northern Railway, and he stated that he could not see the electric lights in the city of Houston at all from the point where he was ejected. There was a street car line within seven or eight blocks of where appellee was ejected, but appellee did not know how to reach this line at the time, and stated that he was compelled to grope his way in the dark up appellant's track back to the city of Houston through the wind and rain, and that in doing so he had to pick his way over switch tracks and cross tracks, and that he was very apprehensive that he would be run over or injured by a train, and that he suffered a great deal of mental anguish, and also from the rain and cold, and that when he reached his son's house, about 11 o'clock that night, he was wet and cold, and very tired. He further stated that he took a severe cold from the exposure he had endured, and that he was threatened with pneumonia, but there is no testimony that he was made sick or confined to his bed. and no allegations in his petition to that effect, nor any contention that he sustained any loss of time in consequence of his unlawful ejection. Appellee's son also testified as a witness in the case, and substantially corroborated appellee as to the conditions of the weather prevailing that night, and further stated that his father got back to his house about 11 o'clock that night, and that when he got there he was wet and cold, and was perfectly exhausted. Appellee, at the time of the transaction in question, was about 60 years of age, and was a country man, who lived at Romaro, in Liberty county, and was making his way back home at the time of his rejection.

We think that the above states substantially all the material facts necessary to be considered in connection with this assignment, and the question is: Are these facts sufficient to warrant the verdict of the jury in appellee's favor for $2,000, which was the full amount sued for?

In support of its contention that the verdict is excessive, appellant cites Howe, Rec., v. Gibson, 22 S. W. 826; Howe, Rec., v. Oliver, 22 S. W. 828; Railway Co. v. Marshall, 140 S. W. 508; Railway Co. v. Gibson, 79 S. W. 354; Railway Co. v. Green, 154 S. W. 278; Railway Co. v. Sain, 24 S. W. 958.

Appellee, in support of his contention that the verdict is not excessive, cites Railway Co. v. Wharton, 145 S. W. 282; Railway Co. v. Raymond, 135 Ky. 738, 123 S. W. 281, 27 L. R. A. (N. S.) 176; Railway Co. v. Dubose, 171 S. W. 1090; Smith v. Railway Co., 192 Mo. App. 210, 180 S. W. 1036; Railway Co. v. Wallace, 152 S. W. 873; Railway Co. v. Carroll, 151 S. W. 1116; Railway Co. v. Dodd, 167 S. W. 238; Railway Co. v. Love, 169 S. W. 922; Railway Co. v. Becker & Sale, 171 S. W. 1024; Railway Co. v. Rose, 172 S. W. 756; Railway Co. v. Miller, 191 S. W. 374.

[1] We have carefully read the above authorities, as cited by each side, and have con-

cluded, after reading them all, that none of them would justify this court in upholding the verdict of the jury in this case in favor of appellee for the sum of $2,000. It is generally held that the law affords no accurate test by which damages are to be measured in a case of this character, and the rule is that the damages to be awarded a passenger, where liability is established on the part of the carrier, in cases of this character, is a question which is addressed to the discretion and judgment of a fair and impartial jury upon all the facts and circumstances in the case, and that a jury's verdict, in this character of cases, awarding damages, will not ordinarily be disturbed unless it is made to appear that the amount found in favor of the plaintiff is so excessive as to indicate passion or prejudice, either in favor of plaintiff or against the defendant, or some other improper motive or consideration, which actuated the jury, and such has been the holding of the courts of this state; but our courts have uniformly held also that, even in the absence of affirmative facts showing prejudice or bias, or other improper motive, that if the amount awarded the plaintiff in cases of this character seems to be so excessive and out of proportion to the injury sustained, the appellate courts will review such verdicts, and cause a remittitur by the appellee, or reverse the judgment and remand the case.

[2] It is also true that each case of this character must be decided upon its own particular facts, and it is seldom, perhaps, that any two cases of this character will be found just alike in the facts, but, after reviewing all the authorities cited by parties for each side, we believe that we are correct in saying that none of them, when the facts are considered upon which the judgments were based, can be considered authority for upholding the verdict of the jury in this case for the sum of $2,000 in favor of appellee, and we believe it to be the duty of this court in this instance to sustain appellant's assignment that this verdict is excessive, and we think that a verdict for the sum of $1,000 would have been the very largest amount to which the appellee was entitled in this case, and we have decided to reverse and remand this case, unless appellee will enter a remittitur in this court to the extent of $1,000 within the next 15 days, which, if done, the judgment in favor of appellee will be affirmed for the sum of $1,000, but otherwise the cause will be reversed and remanded; and it is so ordered.

### On Entry of Remittitur.

At a former day of the term, to wit, on the 1st day of February, 1918, the judgment of the trial court in this cause in favor of appellee for the sum of $2,000 was held by this court to be excessive to the extent of $1,000, and it was ordered for that reason that the judgment of the trial court be reversed and remanded unless appellee would file a remittitur in this court to the extent of $1,000 within 15 days from the date the original opinion of this court was filed, and that, if appellee should file such remittitur, the judgment of the trial court would be affirmed in favor of appellee for $1,000. Since the filing of this court's original opinion appellee has filed in this court his offer to remit the sum of $1,000, as provided by the order of this court, and agrees that this court may enter judgment in appellee's favor for the sum of $1,000, and affirm the judgment of the trial court to that extent.

It is therefore now ordered, adjudged, and decreed by this court that the judgment of the trial court be affirmed in favor of appellee for the sum of and to the extent of $1,000, and that he recover that sum as against appellant, Houston East & West Texas Railway Company, with interest thereon from this date at the rate of 6 per cent. until paid, together with all costs of this appeal.

The order reversing and remanding this cause as heretofore made is here now set aside, and the judgment of the trial court as here now modified is in all things affirmed.

---

⟨⟩For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes